UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION

| | |
|---|---|
| GARY MARTIN, individually and on behalf of all others similarly situated,<br><br>v.<br><br>MATADOR RESOURCES COMPANY | Case No. 2:20-cv-54<br><br>Jury Trial Demanded<br><br>Class & Collective Action |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1. Matador Resources Company (Matador) failed to pay Gary Martin, and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, (NMMWA).

2. Instead of paying overtime as required by state and federal law, Matador paid these workers a daily rate with no overtime pay.

3. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5. The Court has supplemental jurisdiction over the NMMWA claims under 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7. Martin worked for Matador in this District in Eddy and Lea Counties, New Mexico.

8. Matador has availed itself to the jurisdiction of this Court. Matador maintains offices and business operations in this District, including in Artesia, New Mexico.

## THE PARTIES

9. Martin worked for Matador as a Drilling Superintendent from approximately June 2016 through February 2018.

10. Throughout his time with Matador, he was paid a day-rate with no overtime compensation.

11. His consent to be a party plaintiff is attached as **Exhibit A**.

12. Martin represents at least two classes of similarly situated co-workers

13. First, Martin brings this action on behalf of himself and all other similarly situated workers paid by Matador's day-rate system.

14. Matador paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The FLSA class of similarly situated workers consists of:

**All oilfield workers employed by or performing work on behalf of Matador and paid a day-rate without overtime during the past three years (the "Day Rate Workers").**

16. Second, Martin represents a class of similarly situated inspectors under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

17. The NMMWA Class is defined as:

**All oilfield workers employed by or performing work on behalf of Matador in New Mexico while paid a day-rate without overtime during the past three years.**

18. Matador is a company doing business throughout the United States.

2

19. Matador Resources Company is a Texas corporation that does business in a systematic and continuous manner in New Mexico, but that does not maintain an agent for service of process in New Mexico. It may therefore be served pursuant to NMSA § 38-1-16(B) and New Mexico Rule of Civil Procedure 1-004(G) by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201, or by any other method permitted by law.

## COVERAGE UNDER THE FLSA

20. For at least the past three years, Matador has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. For at least the past three years, Matador has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22. For at least the past three years, Matador has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

23. Matador has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials such as drilling equipment, cell phones, laptops, and hand tools that have been moved in or produced for commerce by any person.

24. Matador also has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

25. For at least the past three years, Martin and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

26. Matador treated Martin (and indeed all its Day Rate Workers that it classified as independent contractors) as employees and uniformly dictated the pay practices to which Martin and the other Day Rate Workers (including so-called "independent contractors") were subjected.

27. Matador's misclassification of Martin and other Day Rate Workers as an independent contractor does not alter its status as an employer for purposes of the class and collective action.

**FACTS**

28. Matador is an independent energy company engaged in the exploration, development, production and acquisition of oil and natural gas resources in the United States.

29. Its operations "are focused primarily on the oil and liquids-rich portion of the Wolfcamp and Bone Spring plays in the Delaware Basin in Southeast New Mexico and West Texas" and "in the Eagle Ford shale play in South Texas and the Haynesville shale and Cotton Valley plays in Northwest Louisiana and East Texas."[1]

30. To complete its business objectives, Matador hires personnel to perform the necessary work.

31. Over the past three years, Matador employed dozens of individuals – including Martin – as Rig Hands, Directional Drillers, Mud Engineers, Mud Loggers, and Drilling Superintendents (or similar positions) in several states.

32. While exact job titles and job duties may differ, these oilfield workers are subjected to the same illegal pay practice for similar work.

33. Specifically, Matador paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

34. For example, Matador employed Martin as a Drilling Superintendent from approximately June 2016 through February 2018.

35. Throughout this time, Matador paid Martin on a day-rate basis.

---

[1] http://www.matadorresources.com/about/strategies-and-heritage (Last visited January 9, 2020).

36. As a Drilling Superintendent, Martin's primary job duties included observing drilling operations on the rig and ensuring that the team followed safety protocol.

37. Martin worked well in excess of 40 hours each week while employed by Matador.

38. The work Martin performed was an essential part of Matador's core business.

39. During Martin's employment with Matador while he was classified as an independent contractor, Matador exercised control over all aspects of his job.

40. Matador did not require any substantial investment by Martin for him to perform the work required of him.

41. Matador determined Martin's opportunity for profit and loss.

42. Indeed, Matador controlled all the significant or meaningful aspects of the job duties performed by Martin.

43. Matador controlled the hours and locations Martin worked, the tools he used, and the rate of pay he received.

44. Matador controlled all aspects of Martin's job activities by enforcing mandatory compliance with Matador's policies and procedures.

45. He worked on Matador's well sites and utilized equipment and software provided by Matador to perform his job duties on Matador's behalf.

46. Martin did not provide the equipment he used on a day-to-day basis.

47. Matador made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Martin worked.

48. Martin did not incur operating expenses like rent, payroll, and marketing.

49. Martin was economically dependent on Matador during his employment.

50. Matador directly determined Martin's opportunity for profit and loss.

51. Martin's earnings were based on the number of days Matador scheduled him to work.

52. Very little skill, training, or initiative was required of Martin to perform his job duties.

53. Martin performed routine duties that were largely dictated by Matador.

54. Martin was not employed by Matador on a project-by-project basis.

55. In fact, while Martin was classified as an independent contractor, he was regularly on call for Matador and was expected to drop everything and work whenever needed.

56. The daily and weekly activities of the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Matador.

57. Virtually every job function was pre-determined by Matador, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

58. The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters.

59. Moreover, the job functions of the Day Rate Workers were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

60. For the purposes of an FLSA overtime claim, the Day Rate Workers performed substantially similar job duties related to servicing oil and gas operations in the field.

61. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice.

62. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for weeks at a time.

63. Instead of paying them overtime, Matador paid the Day Rate Workers a day-rate.

64. Matador denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

65. Matador's policy of failing to pay its independent contractors, including Martin, overtime violates the FLSA because these workers are, for FLSA purposes, non-exempt employees.

66. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

67. These Day Rate Workers carry out the hands-on, day-to-day production work of Matador.

68. Because Martin and the other Day Rate Workers were misclassified as an independent contractors, Matador owes them overtime for all hours worked in excess of 40 hours in a workweek.

69. Despite knowing the FLSA and NMMWA's requirements, Matador failed to pay Martin and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

70. Martin incorporates the preceding paragraphs by reference.

71. As set forth herein, Matador violated the FLSA by failing to pay Martin and the Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

72. Matador knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation.

73. Matador's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

74. Accordingly, Martin and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

**NMMWA VIOLATIONS**

75. Martin brings this claim under the NMMWA as a Rule 23 class action.

76. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

77. At all relevant times, Matador was subject to the requirements of the NMMWA.

78. At all relevant times, Matador employed Martin and each Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

79. The NMMWA requires employers like Matador to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Martin and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

80. Matador had a policy and practice of misclassifying Martin and each member of the New Mexico class as exempt and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

81. Martin and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

82. Martin and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Matador, as provided by the NMMWA.

83. The improper pay practices at issue were part of a continuing course of conduct, entitling Martin and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

84. Martin incorporates all previous paragraphs and alleges that the illegal pay practices Matador imposed on them were likewise imposed on the members of the class.

85. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

86. Dozens of other individuals who worked with Martin indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

87. Matador employed dozens of Day Rate Workers across New Mexico, Texas, and Louisiana. As a result, joinder of their individual claims is impracticable, and a class and collective action serves the interests of judicial economy.

88. Based on his experiences and tenure with Matador, Martin is aware that Matador's illegal practices were imposed on other Day Rate Workers.

89. Matador used day rate contractors across the United States.

90. The Day Rate Workers (including the subset that makes up the NMMWA Class) were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

91. Matador is an "employer" of Martin and the Day Rate Workers.

92. Matador's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

93. Martin's experiences are therefore typical of the experiences of the Day Rate Workers.

94. The specific job titles or precise job locations of the Day Rate Workers do not prevent class or collective treatment.

95. Martin has no interests contrary to, or in conflict with, the members of the class.

96. Like all the Day Rate Workers, Martin has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

97. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

98. Absent this action, many members of the class likely will not obtain redress of their injuries and Matador will reap the unjust benefits of violating the FLSA and the NMMWA.

99. Furthermore, even if some of the members of the class could afford individual litigation against Matador, it would be unduly burdensome to the judicial system.

100. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

101. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members.

102. Among the common questions of law and fact are:

   (a) Whether Matador employed the members of the class within the meaning of the FLSA and the NMMWA;

   (b) Whether the members of the class were improperly classified as contractors;

   (c) Whether Matador's decision to classify the members of the class was made in good faith;

   (d) Whether Matador's decision to not pay time and a half for overtime to the members of the class was made in good faith;

   (e) Whether Matador's violation of the FLSA was willful; and

   (f) Whether Matador's illegal pay practices were applied uniformly to the Day Rate Workers.

103. Martin's claims are typical of the claims of the other Day Rate Workers.

104. All Day Rate Workers, including Martin, sustained damages arising out of Matador's illegal and uniform employment policy.

105. Martin knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or a collective action.

106. Even if the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

107. Martin demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment against Matador as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding Matador liable for all unpaid overtime and an equal amount of liquidated damages;

(c) For an order designating the NMMWA class as a class action pursuant to FED. R. CIV. P. 23;

(d) For an order finding Matador liable for all unpaid overtime owed under NMMWA at the highest available rates allowed by law;

(e) For an order appointing Martin and his counsel to represent the interests of the federal collective and the New Mexico Class;

(f) For an order awarding Martin and the Day Rate Workers their costs;

(g) For an order awarding Martin and the Day Rate Workers their attorneys' fees;

(h) For an order awarding Martin and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(i) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Richard Burch
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    Michael A. Josephson
    State Bar No. 24014780
    (*seeking admission pro hac vice*)
    Carl A. Fitz
    State Bar No. 24105863
    (*seeking admission pro hac vice*)
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**